# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| KIMBERELY ANN DEROCHE, | ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | 1:10-cv-00137-JAW |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) ) ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

The Social Security Administration found that Kimberely Ann Deroche has severe impairments consisting of scoliosis/kyphosis/degenerative disk disease with chronic pain syndrome, but retains the functional capacity to perform substantial gainful activity in occupations existing in significant numbers in the national economy. This resulted in a denial of Deroche's application for disability insurance benefits under Title II of the Social Security Act. Deroche commenced this civil action to obtain judicial review of the final administrative decision, alleging "pervasive inaccuracies and omissions" in connection with an adverse credibility assessment and requesting remand to a different Administrative Law Judge based on bias. I recommend that the Court affirm the Commissioner's decision.

## Standard of Review

The standard of review is whether substantial evidence supports the Commissioner's findings. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's

findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**The Administrative Findings**

The Commissioner's final decision is the April 2, 2010, decision of the Decision Review Board, which "found no reason" to disturb the decision of Administrative Law Judge John Melanson. The Commissioner rests, in effect, on Judge Melanson's December 29, 2009, decision. Judge Melanson's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. (Docs. Related to Admin. Process, Doc. No. 5-2, R. 1, 11-21.[1])

At step 1 of the sequential evaluation process, the Judge found that Deroche's insured status under Title II continued through December 31, 2010, and that she had not engaged in substantial gainful activity since February 23, 2004, the date of her alleged onset of disability. (R. 13, ¶¶ 1 & 2.)

At step 2, the Judge found that Deroche has the following severe physical impairments: scoliosis/kyphosis/degenerative disk disease with chronic pain syndrome. (Finding 3, R. 14.)

At step 3, the Judge found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. (R. 16, ¶ 4.) He discussed, in particular, listing 1.04, disorders of the spine, and 14.09, inflammatory arthritis, finding that they were not met because of an absence of evidence of nerve root compression, spinal arachnoiditis, stenosis, inability to ambulate effectively,

---

[1] The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 5.

2

inability to perform fine and gross movements effectively, or ankylosis of the cervical or dorsolumbar spine. (R. 16-17.)

Preliminary to steps 4 and 5, the Judge found that Deroche's combined impairments leave her with a residual functional capacity (RFC) for less than the full range of sedentary work, described as a capacity to lift or carry no more than 10 pounds, whether occasionally or frequently; to stand and/or walk for two hours in an eight-hour day; and to sit for six hours in an eight-hour day, provided she can alternate position at will; all of which is subject to various additional postural, manipulative, and environmental restrictions. (R. 17, ¶ 5.)

At step 4, the Judge found that this degree of impairment would not allow Deroche to return to past relevant work, which would not allow for a sit/stand option or would require greater exertion. (R. 19, ¶ 6.)

At step 5, relying on vocational expert testimony, the Judge found that Deroche could still perform other substantial gainful employment, including the sedentary occupations of order taker (249.362-026), telephone answering service operator (235.662-026), and receptionist (237.367-038). (R. 20, ¶ 10.)

## Discussion of Plaintiff's Statement of Errors

The Judge's residual functional capacity finding is based on the existence of spinal defects and chronic pain syndrome. Deroche argues that the Judge erred in regard to his residual functional capacity by making an unjustified negative credibility assessment concerning the severity of her pain and also by failing to account for the contributory impact obesity has on her other impairments. (Statement of Errors at 2, 16.) For reasons that follow, I recommend that the Administrative Law Judge's decision be affirmed and that judgment enter for the Commissioner.

A.  **Obesity**

In his decision, the Judge identified the relevant ruling, SSR 02-1p, and allowed that obesity would be a possible factor for Deroche given the musculoskeletal issue and Deroche's body mass index. (R. 15.) However, the Judge found it not to be a severe factor in light of Deroche's testimony at the hearing that her weight has not affected her ability to work. (Id.)

> Q. How much of [sic] your weight affected your ability to do work like activities, if at all?
>
> A. My weight hasn't affected it.

(Hr'g Tr., R. 44.) Deroche complains that the Judge cannot simply take her word for it and must analyze and discuss what the medical record reveals. She observes that the record describes surgical procedures to reduce her weight, including possible breast reduction surgery, bariatric surgery, and dieting. (Statement of Errors at 17.) In fact, my review of the record indicates that breast reduction surgery was performed, specifically in the hope that reduced upper body weight might alleviate Deroche's chronic back pain to a degree. (Ex. 9F, R. 407.) Ruling 02-1p explains that obesity is a risk factor for acquiring other impairments, both physical and mental, and promises that the Commissioner will consider obesity in the sequential evaluation process. In this case, for example, there is a severe musculoskeletal impairment. Obesity would tend to have some impact on Deroche's subjective experience of chronic back pain. The Judge allowed that this would normally be the case. However, when asked, Deroche denied that her weight limited her ability to work. Moreover, when asked at oral argument to describe what the medical records say about the impact of obesity in limiting Deroche's functioning, Deroche's counsel conceded that the medical records did not directly address this question. Given this presentation, there is no reversible error in the absence of a prolonged obesity discussion. The material question for purposes of this review is how debilitating Deroche's spinal impairment is on

4

account of the pain limitations it imposes. The Judge made allowance for pain and other restrictions in his RFC finding but concluded that Deroche's representation of debilitating pain was not credible to the extent it would require a more restrictive RFC finding. (R. 19.) Consequently, credibility is the material issue.

**B.     Credibility inferences associated with pain symptoms**

When it comes to pain, medically acceptable clinical and laboratory diagnostic techniques may reflect that a patient's allegations of subjective pain are reliable, but a patient's subjective pain experience is not as often proven by clinical or laboratory evidence. In this case, for example, there is objective evidence of spinal conditions that would cause chronic pain, but no objective medical evidence of the degree of Deroche's subjective experience of pain. The spinal condition is described as 40 degree scoliosis from T4 to L1 and 27 degree scoliosis from T12 to L5 with some lateral listhesis and kyphosis close to 70 degrees . (*E.g.*, Ex. 12F, R. 544; Ex. 15F, R. 569.) The Judge found this condition to result in severe impairment and described it as follows:

> The claimant's scoliosis/kyphosis/degenerative disc disease with chronic pain syndrome is a severe impairment. A July 2004 radiological report revealed a superior curve of 49 degrees measured between T5 and Tl2 with apex to the right at T9, a second curve of 33.3 degrees from T12 to L5 with apex to the left at L3, and minor curvatures at L5-S1 and in the upper thoracic area (Ex. 5F). Kyphosis is defined as a rounding of more than 45 degrees of the thoracic spine. Additionally, an MRI of the lumbar spine conducted in December 2005 showed moderate levoscoliosis with moderate proliferative facet degenerative changes at L4-L5, and a cervical MRI showed mild to moderate broad based posterior ridging at C5-C6 and C6-C7 (Ex. 11F). The claimant experiences lower and upper back pain which limits her ability to stand or walk for extended periods, as well as her ability to initiate, sustain and complete activities (Ex. 12E).

In his residual functional capacity discussion, Judge Melanson began with a review of the medical records, describing Deroche's history of scoliosis from childhood and treatment consisting of physical and aqua therapy, trigger point injections, and pain medications. (R. 17.)

5

Deroche reported constant pain symptoms of varying intensity throughout her body that are always present and severe enough to interfere with activity. Pain medications, by her account, do no more than take the edge off. (R. 17-18.) The Judge found this report to be contradicted by the record.

> The radiological findings of record are not supportive of the degree of impairment she reportedly suffers (Exs. 5F, 11F). According to Dr. Webber, the only MRI study of record in 2005 establishes mild degenerative disc disease without frank neurological impairment. Additionally, the record reflects that Ms. Deroche has expressed symptom relief when engaged in aqua therapy, exercise and SI joint injections (Exs. 6F, 17F), while medical examinations have consistently revealed only a slight limitation in spinal range of motion, negative straight leg raises, normal movement of extremities and normal strength (Exs. 3F, 6F, 17F, 24F).

(R. 18.) The Judge also found that Deroche's testimony about driving worked against her:

> When questioned at hearing as to whether she reported any physical or mental impairment when she last renewed her driver's license, she testified that she did not report any limitations, but only because it did not occur to her that she had impairments which prevented her from driving, since that activity did not involve any "real twisting or lifting". On the contrary, driving involves twisting when getting in and out of a vehicle, putting on a seat belt, which the record reflects that she always uses (Ex. 16F), and checking other lanes for oncoming traffic.

(Id.) The Judge further noted that the ability to drive contradicted a report related to the side effects of medication. (Id.) Adding weight to the "not disabled" side of the scale, the Judge noted a care provider's description that Deroche is "independent with her basic [activities of daily living]" (id., citing 17F); another's mention that medications "are well tolerated" (id., citing 11F); and another's report that pain is "in fair control" with medication and that she could participate in an exercise program (id. at 18-19, citing 16F). Also noteworthy, to the Judge, was Deroche's ability to travel to Minnesota and Texas and to tend to household activities. (Id. at 18-19.)

This evidence, in the Judge's view, contradicted Deroche's allegations and also a doctor's note issued by the practice of Eric Caccamo, DO, in May of 2006, stating that Deroche's work

6

schedule must be restricted to four-hour shifts, three days per week. (R. 18, citing Ex. 11F.) The Judge was careful to note that Deroche's degree of daily activity surpassed her allegations of disability and buttressed his ultimate RFC finding. Further supporting the Judge's RFC finding are multiple assessments by Disability Determination Services expert consultants. (Dr. Chamberlin's June 2005 Physical RFC Assessment, Ex. 7F; Dr. Hoch's Jan. 2007 Physical RFC Assessment, Ex. 12F; Dr. Stucki's May 2008 Physical RFC Assessment, Ex. 15F; Dr. Chamberlin's Oct. 2008 Physical RFC Assessment, Ex. 19F.) Dr. Stucki, in particular, observed that the note from Dr. Caccamo may have been appropriate, "particularly if no restrictions were placed on walk/stand/lift, etc.," but that the placement of proper restrictions would enable sedentary work. (Ex. 15F.) Finally, the Judge also relied on Deroche's demeanor at the hearing, describing her response to questioning as evasive, which is not something the transcript can capture for meaningful review.

> This claimant's testimony is not credited fully, and in reaching this conclusion, great evidentiary weight is given to the claimant's demeanor at hearing. Demeanor evidence may be highly unreliable in assessing credibility, and consequently of little evidentiary value. It is with an abundance of restraint that any weight is given to demeanor evidence. The claimant's manner of testifying was evasive, and done in a manner which magnified her symptoms, and minimized her abilities. Of particular note, upon questioning by the undersigned, Ms. Deroche testified that her ability to travel to Minnesota and Texas, her ability to attend weekly hour-long bible study or to make blankets (Exs. 17E, 16F, 21F) do not reflect reliably the pain distraction that she suffers. The undersigned disagrees. This level of restriction in function is consistent with her activities of daily living, which are wide-ranging and performed on a sustained, effective, independent and appropriate basis.

(R. 19.) Deroche says that the Judge issued an unsustainable credibility decision with pervasive inaccuracies and material omissions that are reflective of bias. (Statement of Errors at 17.)

In reviewing the record for substantial evidence, the Court must keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime

7

responsibility of the [Commissioner]."  Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965).  The administrative law judge has the unenviable duty to make the credibility determination, 20 C.F.R. § 404.1529(a), (c)(1), (c)(4), and in doing so he or she has leeway to consider what the "entire case record" reveals and what reasonable inferences it supports.  Id.; see also SSR 96-7p ("[W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.").  The Court cannot overturn that finding just because it might draw different inferences from the record.  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  The claimant must demonstrate that the Judge's inferences were unreasonable;  the kind of inferences that a reasonable mind would not accept as adequate to support a finding.  Rodriguez, 647 F.2d at 222 (describing the substantial evidence standard).

According to Deroche, the Judge has misstated her testimony.  (Statement of Errors 3-4.) She explained at the hearing that her trip to Minnesota was only possible because of increased medication and that she did not participate in family activities to the extent she wished.  Deroche says travel to Texas was important to her husband's employment.  As for bible studies, this program is one hour weekly, so it does not amount to an excessive activity.  Deroche says her blanket making is similarly insignificant.  (Hr'g Tr., R. 40-42, 54-58.)  Deroche argues that, read literally, the Judge's description of her testimony is false because she never responded to a direct question about whether her activities are consistent with the level of pain she reports.  I agree with Deroche that her ability to attend a bible studies class and pursue a hobby are not independently weighty enough to call into question her testimony about her inability to work full

8

time due to pain. I also agree with her that the transcript does not reveal a direct question from the Judge about whether or not her activities are consistent with the level of pain she experiences. However, the Judge's wording still adequately conveys his meaning, which is that he questioned Deroche about these activities and her travels, obviously to assess whether they are consistent with her report of severe pain symptoms, and she explained them away in terms of their significance. The Judge's point was not that the bible course or blanket making disproved Deroche's testimony about pain, but that Deroche's responses were expressed in a way that caused him to doubt her truthfulness and bolstered the finding that Deroche has a level of functioning corresponding with his RFC finding (less than the full range of sedentary occupations).

Deroche argues that the Judge's credibility finding is flawed because the Judge did not note that her treatment providers had described her in ways suggesting credibility and honesty. The Commissioner's regulations called upon the Judge to consider and weigh expert opinion on "the nature and severity of [Deroche's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404. 1527(a)(2). Contrary to Deroche's statement, the Judge does not have to defer to credibility assessments made by others. The Judge must consider the entire case record, but is not forced to find a claimant credible whenever a treatment provider has described the claimant as reliable or reasonable. The Judge's failure to reference positive credibility statements by others is not a ground for reversal.

> [I]t is clear that he found plaintiff's testimony about the limiting severity of her pain not credible, inconsistent with the medical signs reported, and inconsistent with the daily activities and work history which she described. In these circumstances, "the credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference . . . "

9

Shaw v. Sec'y of HHS, No. 93-2173, 1994 U.S. App. Lexis 14287, *7, 1994 WL 251000, *2 (1st Cir. June 9, 1994) (not for publ'n) (quoting Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987)).

Deroche complains that the Judge put too much emphasis on her performance of minimal activities, which she did to a restricted degree. (Statement of Errors at 6-7.) However, contrary to her presentation, I do not read the Judge's decision as placing significant weight on Deroche's limited use of a home computer, her attendance at occasional school events, her ability to maintain personal hygiene, and her lack of need for a personal care attendant.

The Judge did place some significant weight on Deroche's ability to drive a car. However, he explained that he placed weight on Deroche's ability to drive because it contradicted her allegations of drowsiness and dizziness from medications and distraction from pain. He also found that Deroche's ability to drive without experiencing significant pain was inconsistent with her allegations because entering and exiting the car and applying a seat belt involve twisting. (R. 18.) The Judge was entitled to draw these inferences and combine them with other evidence as part of an unfavorable credibility assessment. This is also responsive to Deroche's contention that the Judge inadequately addressed the side effects of medication.

Deroche next asserts that the decision does not adequately credit her positive work history and her attempts to work after her alleged onset date. (Statement of Errors at 12.) The record reflects substantial gainful activity through 2003 with a cessation of full time work in 2004. (Ex. 4D, R. 184-85.) Deroche left her long-term work in a school setting in 2004 because she concluded she would not be able to perform passive restraints. (Hr'g Tr., R. 45.) However, the record does not indicate that her condition was aggravated by an attempt to restrain a student. After that, Deroche worked at an L.L. Bean call center in the 2004 holiday season. (Ex. 7E, R.

235.) At hearing, Deroche stated that her medical condition did not allow her to remain, following about a month of effort, even though her desk was adjustable and allowed for a sit/stand option. (Hr'g Tr., R. 29-30.) In 2005, Deroche performed two consulting jobs for a florist. (Id., R. 234.) The record does not describe any other work attempts. This record shows some effort to work, which is a material consideration in a credibility analysis under Ruling 96-7p, but the evidence is not weighty. It is not apparent that the consulting work held out the prospect of work on a regular basis. As for L.L. Bean, Deroche worked in November and December 2004 and the nature of the L.L. Bean holiday work is inherently seasonal, or is ordinarily so. This does not warrant a weighty inference in Deroche's favor and does not override the Judge's unfavorable inferences and specific findings about Deroche's ability to perform a wide range of daily activities, the absence of frank neurological impingement, the presence of normal strength, the positive response to therapy and medication management, and demeanor at the hearing.

## Conclusion

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court AFFIRM the Commissioner's final decision and enter judgment in favor of the Commissioner.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

April 26, 2011